**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

———————————————— x
                        :
ANTHONY DOVER, on behalf of himself and :
others similarly situated,             :
                        :
            Plaintiff,    :
                        :
         v.             :
                        :
CONSUMER SAFETY TECHNOLOGY, LLC :
d/b/a INTOXALOCK,         :
                        :
           Defendant.   :
———————————————— x

**Civil Action No.**

**<u>COMPLAINT - - CLASS ACTION</u>**


**JURY TRIAL DEMANDED**

**Nature of the Action**

1.      Anthony Dover ("Plaintiff") brings this class action against Consumer Safety Technology, LLC d/b/a Intoxalock ("Defendant") under the Consumer Leasing Act ("CLA"), 15 U.S.C. § 1667, and its implementing regulations, 12 C.F.R. § 1013 *et seq.* ("Regulation M"), on behalf of himself and other similarly situated customers.

2.      Plaintiff alleges that Defendant violated the CLA and Regulation M by providing confusing and insufficient payment disclosures in its ignition interlock device lease agreements.

3.      By virtue of these faulty disclosures, Plaintiff and other lessees rented ignition interlock equipment from Defendant without understanding their true financial obligations—the very concern that brought about the CLA in the first place.

4.      "Congress enacted the CLA as an amendment to the [Truth in Lending Act ("TILA")] and [thereby] extended the TILA's 'credit disclosure requirements to consumer leases.'" *Clement v. Am. Honda Fin. Corp.*, 145 F. Supp. 2d 206, 209 (D. Conn. 2001).[1]

5.      Both the CLA and TILA serve to protect consumers from obfuscation or misinformation in credit and lease transactions that are otherwise ripe for misunderstandings.

6.      In other words, Congress recognized and sought to remedy the information imbalance in credit and lease transactions, as many consumers lack the financial experience and wherewithal of those sophisticated companies with whom they do business.

7.      Defendant's form ignition interlock lease agreements with Plaintiff and the putative class members are defective for the same reasons: they fail to give clear and sufficient financial disclosures required by the CLA and Regulation M, in a manner that satisfies the statute and its regulations.

## Parties

8.      Plaintiff is a natural person who, at all relevant times, resided in Franklin County, Ohio.

9.      Plaintiff is a "lessee" as defined under the CLA, 15 U.S.C. § 1667(2).

10.     Defendant is a limited liability company with principal offices in Urbandale, Iowa.

11.     Defendant operates within the state of Ohio using the brand name "Intoxalock."

---

[1]      Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

12.    Under the Intoxalock name, Defendant advertises "over 20 years of experience helping people just like you install an ignition interlock device in Ohio and get back on the road."[2]

13.    Defendant offers the "[l]argest location network in Ohio," boasting of nearly 80 different locations within the state.[3]

14.    Defendant leases its ignition interlock devices to drivers across Ohio through use of "consumer leases" as defined under the CLA, 15 U.S.C. § 1667(1).

15.    Thus, Defendant is a "lessor" as defined by 15 U.S.C. § 1667(3).

16.    Defendant so identified itself as the lessor in the agreement that Plaintiff signed.

### Jurisdiction and Venue

17.    This Court has subject matter jurisdiction under 15 U.S.C. § 1667d(c) and 28 U.S.C. § 1331.

18.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's action occurred in this district, and as Defendant conducts business in this district.

### Background of the CLA

19.    The CLA at its core requires disclosure of important lease terms—particularly financial terms—to protect consumers entering into lease arrangements.

20.    "Passed by Congress as an amendment to the Truth In Lending Act [], the CLA purports 'to assure a meaningful disclosure' of personal property lease terms to 'enable the lessee to compare more readily the various lease terms available to him [and] limit balloon payments in

---

[2]    https://www.intoxalock.com/ohio/ (last visited August 24, 2020).

[3]    *Id.*

3

consumer leasing.'" *Gaydos v. Huntington Nat. Bank*, 941 F. Supp. 669, 672 (N.D. Ohio 1996)

(quoting 15 U.S.C. § 1601(b)).

21.     In other words,

> [b]ecause lease financing had become recognized as an alternative to credit
> financing and installment sales contracts, Congress also intended CLA disclosure
> requirements to enable comparison of lease terms with credit terms where
> appropriate. The CLA thus requires lessors of personal property subject to its
> provisions to make specified disclosures when a lease is entered into.

*Turner v. Gen. Motors Acceptance Corp.*, 180 F.3d 451, 454 (2d Cir. 1999).

22.     TILA's "strict liability standard attaches to violations of CLA disclosure

requirements as well." *Gaydos*, 941 F. Supp. at 672.

23.     Also important, "TILA reflects a transition in congressional policy from a

philosophy of 'Let the buyer beware' to one of 'Let the seller disclose.'" *Layell v. Home Loan &

Inv. Bank, F.S.B.*, 244 B.R. 345, 350 (E.D. Va. 1999).

24.     Given that Congress enacted the CLA within the same statutory provisions as

TILA, this same philosophy applies with equal force to the CLA and Regulation M.

**Lease Disclosure Requirements**

25.     To that end, the CLA and Regulation M require several types of disclosures in a

consumer lease, all of which must be made in a clear and conspicuous manner, and certain of

which also must be made in a "segregated" manner—meaning they must be set apart from the

other lease terms. 12 C.F.R. pt. 1013.3(a)(2).

26.     Such requisite "segregated" disclosures include the amount due at lease signing or

delivery; the number, amount, and due dates or periods of payments scheduled under the lease,

and the total amount of the periodic payments; the total amount of other charges payable to the

lessor, itemized by type and amount, that are not included in the periodic payments; and the total

of all payments due under the lease, with a description such as "the amount you will have paid by the end of the lease." 12 C.F.R. pt. 1013.4.

27.     And per 12 C.F.R. pts. 1013.3 and 1013.4, these segregated disclosures must "be provided in a manner substantially similar to the applicable model form in appendix A" of Regulation M.

28.     So, if a lessor chooses *not* to use the model form attached to the implementing regulations (and attached here as Exhibit A), the requisite "segregated" disclosures must be given in a manner at least "substantially similar to" that model form.

29.     These requirements for "segregated" disclosures date back to 1996, when the Board of Governors of the Federal Reserve System ("Board") conducted a review of Regulation M to ensure its continued and adequate protection of consumers.[4]

30.     Among the Board's observations in 1996: "The major revision to this section [of Regulation M] . . . is the requirement to segregate certain disclosures from other information. Clear and conspicuous lease disclosures must be given prior to consummation of a lease on a dated written statement that identifies the lessor and lessee." 61 FR 52246-01, 52249 (Oct. 7, 1996).

31.     The Board amended paragraph 3(a)(1) of Regulation M [12 C.F.R. pt. 1013.3(a)(1)] as follows:

> Former §§ 213.4(a)(1) and 4(a)(2) required that all disclosures be made together on a separate statement or in the lease contract "above the place for the lessee's signature." The Board has deleted this requirement along with the meaningful sequence, same-page, and type-size disclosure requirements, replacing them with the requirement that disclosures be segregated. Most commenters generally

---

[4]     The Board remained tasked with oversight of the CLA and Regulation M until the creation of the Consumer Financial Protection Bureau ("CFPB") in 2011, at which time the CFPB assumed the Board's role with respect to such oversight.

supported the proposed segregation requirement, although some commenters opposed the deletion of the other requirements. They believed that the signature requirement ensured that lessors would give disclosures before the consumer becomes obligated on the lease and discouraged lessors from putting important information on the back of a lease document. The Board believes that a segregation requirement and the clear and conspicuous standard provide the same level of protection as the previous rules.

The segregated disclosures and other CLA disclosures must be given to a consumer at the same time. Lessors must continue to ensure that the disclosures are given to lessees before the lessee becomes obligated on the lease transaction. For example, by placing disclosures that are included in the lease documents above the lessee's signature, or by including instructions alerting a lessee to read the disclosures prior to signing the lease.

Nonsegregated disclosures need not all be on the same page, but should be presented in a way that does not obscure the relationship of the terms to each other.

*Id.*

32.     The Board also amended paragraph 3(a)(2) [12 C.F.R. pt. 1013.3(a)(2)] as follows:

Most commenters—representing both the industry and consumer groups—generally supported some form of segregation of leasing disclosures**. Many commenters believed that consumers would be more likely to read and understand the disclosures if key items were segregated from other disclosures and contract terms.** Pursuant to its authority under section 105(a) of the TILA, **the Board has adopted the requirement that certain consumer leasing disclosures be segregated from other required disclosures and from general contract terms to assure clear, conspicuous, and meaningful disclosure of lease terms.**

Some commenters, including trade groups that represent a large portion of the motor vehicle leasing industry, suggested that the more important disclosures be further highlighted in a manner similar to the Board's Regulation Z. **The Board believes that the segregation requirement and the requirement that disclosures be in a form substantially similar to the applicable model form in appendix A adequately focuses the consumer's attention on key information.**

Lessors may provide the segregated disclosures on a separate document or may include them in their lease contracts, apart from other information. The general content, format, and headings for these disclosures should be substantially similar to those contained in the model forms in appendix A. Lessors may continue to

provide the remaining disclosures required by Regulation M and the CLA in a nonsegregated format.

The model forms in Appendix A for open-end leases, closed-end leases, and furniture leases have been revised.

*Id.*

### Factual Allegations

33.     On or about May 18, 2020, Defendant installed one of its ignition interlock devices in Plaintiff's vehicle, and in connection with that installation, Plaintiff signed one of Defendant's form ignition interlock device leases.

34.     A copy of Plaintiff's May 18, 2020 lease agreement with Defendant is attached as Exhibit B (the "Lease").

35.     Plaintiff leased an ignition interlock device from Defendant for personal, family or household purposes—namely, for use in his personal vehicle.

36.     The initial lease term is six months, as stated on the first page of the Lease. Ex. B at 1.

37.     Plaintiff's Lease describes the leased property as an "eLERT" Intoxalock device, Model 1001A. *Id.*

38.     Beneath this property description is a large table with several columns and rows.

39.     Listed in the first column, "Amount Due at Lease Signing," is a First Lease payment (including sales tax) of $45.68, a $29.56 Setup Fee, and a $5.38 Device Protection Fee, for a total due of $80.62. *Id.*

40.     In the second column, "Lease & Fee Payments," the Lease describes two independent bi-weekly payment requirements. *Id.*

41.     The first requirement—"monthly Lease Payments"—demands 14 bi-weekly payments of $45.68, for a total of $639.52. *Id.*

42.     The second requirement—"device protection fees"—demands 14 payments of $5.38, for a total of $75.32. *Id.*

43.     The third column in the table, "Other Charges (In addition to Lease & Fee payments)," includes several additional payments:

- Data Processing Fee ($3.00 per time, estimated total):  $19.38

- Shipping and Handling:  $0.00

- Administrative Closing Fee:  $64.49

- State Fee:  $12

*Id.*

44.     The "Total" provided for this third column is $95.87. *Id.*

45.     In the fourth column, "Total of Payments (The amount you will have paid by the end of the Lease, including sales tax and state mandated fees, if applicable)," Defendant provides a "Total" of $840.27. *Id.*

46.     Beneath these four columns, Defendant includes over a dozen additional "fees" and "charges," including a "No Show Fee," "Lockout Fee," "Early Cancellation Fee," "Initial Replacement Fee," "Data Log Fee," "Reset Calibration Fee," "Expedited Shipping Fee," and "Labor Per Hour" charge. *Id.*

47.     Under the listing for these various other "fees" and "charges," Defendant advises Plaintiff to "[s]ee your Lease terms below for an explanation of the fees charged by the service center (i.e., installation fee, removal fee, calibration fee, log full fee, and vehicle switch fee)." *Id.*

48.     On the second page of the Lease, under the heading "Official Fees and Taxes," Defendant states:

> The total amount you will pay for official fees and taxes over the term of your Lease, whether included with your recurring payments or assessed otherwise, is:

8

$840.27. This disclosure is an estimate based on an estimate of $25.68 for sales tax and an estimate of $12.00 for other state mandated fees with regard to any ignition interlock program that you are enrolled in. The actual total of fees and taxes may be higher or lower depending on a number of factors, including but not limited to: the tax rates in effect or the value of a Device at the time a fee or tax is assessed; changes in tax rates or other laws made during the term of your lease; or your eligibility in any applicable state financial assistance ignition interlock program.

*Id.* at 2.

49. After the second page, Plaintiff's Lease contains another four-plus pages of single-spaced boilerplate terms printed in a small font. *See generally* Ex. B.

50. During the lease term, Plaintiff paid Defendant more than $470 in total for use of the Intoxalock device subject to the Lease, rarely paying the same sum from one payment to the next.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of a class defined as:

> All persons (1) with an address in Ohio (1) to whom Consumer Safety Technology, LLC d/b/a Intoxalock leased an ignition interlock device for personal, family, or household purposes, (2) with an initial lease term greater than four months, (3) for which the lease is currently in force or was terminated on or after August 24, 2019, and (4) and for which the lease agreement (a) states a dollar figure for "Total of Payments (The amount you will have paid by the end of the Lease, including sales tax and state mandated fees, if applicable)" that conflicts with the dollar figure for the sum of the totals of "Amount Due at Lease Signing," "Lease & Fee Payments," and "Other Charges (In addition to Lease & Fee Payments)"; or (b) states "See your Lease terms below for an explanation of the fees charged by the service center (i.e., installation fee, removal fee, calibration fee, log full fee, and vehicle switch fee)"; or (c) states the same dollar figure for "[t]he total amount you will pay for official fees and taxes over the term of your Lease" as for the "Total of Payments (The amount you will have paid by the end of the Lease, including sales tax and state mandated fees, if applicable)."

52. Excluded from the class is Defendant, its officers and directors, and any entity in which Defendant has or had a controlling interest.

53. The proposed class satisfies Rule 23(a)(1) because, upon information and belief, it is so numerous that joinder of all members is impracticable.

54. The exact number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

55. The proposed class is ascertainable because it is defined by reference to objective criteria.

56. In addition, the proposed class is identifiable in that, upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by Defendant.

57. The proposed class satisfies Rules 23(a)(2) and (3) because Plaintiff's claims are typical of the claims of the members of the class.

58. To be sure, Plaintiff's claims and those of the members of the class originate from the same standardized lease form utilized by Defendant, and Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed class.

59. Plaintiff satisfies Rule 23(a)(4) because he will fairly and adequately protect the interests of the members of the class and has retained counsel experienced and competent in class action litigation.

60. Plaintiff has no interests that are contrary to or irrevocably in conflict with the members of the class that he seeks to represent.

61. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since, upon information and belief, joinder of all members is impracticable.

62.     Furthermore, as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the class to individually redress the wrongs done to them.

63.     There will be no extraordinary difficulty in the management of this action as a class action.

64.     Issues of law and fact common to the members of the class predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the class.

65.     Among the issues of law and fact common to the class:

    a.  Defendant's violations of the CLA as alleged herein;

    b.  Defendant's use of form ignition interlock lease agreements;

    c.  Defendant's practice of providing these lease agreements without proper segregated disclosures as required by the CLA;

    d.  the availability of statutory penalties; and

    e.  the availability of attorneys' fees and costs.

**Count I: Violations of 15 U.S.C. § 1667a and 12 C.F.R. pt. 1013.4**

66.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 65.

67.     The CLA at section 1667a requires in pertinent part that "[e]ach lessor shall give a lessee prior to the consummation of the lease a dated written statement on which the lessor and lessee are identified setting out accurately and in a clear and conspicuous manner the following information with respect to that lease, as applicable:"

(1)     A brief description or identification of the leased property;

(2)     The amount of any payment by the lessee required at the inception of the lease;

(3)     The amount paid or payable by the lessee for official fees, registration, certificate of title, or license fees or taxes;

(4)     The amount of other charges payable by the lessee not included in the periodic payments, a description of the charges and that the lessee shall be liable for the differential, if any, between the anticipated fair market value of the leased property and its appraised actual value at the termination of the lease, if the lessee has such liability;

* * *

(9)     The number, amount, and due dates or periods of payments under the lease and the total amount of such periodic payments.

68.     Regulation M builds upon these requirements, further demanding that certain disclosures be made in a "segregated" manner separate and apart from all other information contained in a consumer lease:

The following disclosures shall be segregated from other information and shall contain only directly related information: §§ 1013.4(b) through (f), (g)(2), (h)(3), (i)(1), (j), and (m)(1). The headings, content, and format for the disclosures referred to in this paragraph (a)(2) shall be provided in a manner substantially similar to the applicable model form in appendix A of this part.

12 C.F.R. pt. 1013.3(a)(2).

69.     Among the disclosures required to be "segregated" in such a manner:

**(b) Amount due at lease signing or delivery.** The total amount to be paid prior to or at consummation or by delivery, if delivery occurs after consummation, using the term "amount due at lease signing or delivery." The lessor shall itemize each component by type and amount, including any refundable security deposit, advance monthly or other periodic payment, and capitalized cost reduction; and in motor vehicle leases, shall itemize how the amount due will be paid, by type and amount, including any net trade-in allowance, rebates, noncash credits, and cash payments in a format substantially similar to the model forms in appendix A of this part.

**(c) Payment schedule and total amount of periodic payments.** The number, amount, and due dates or periods of payments scheduled under the lease, and the total amount of the periodic payments.

**(d) Other charges.** The total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments. Such charges include the amount of any liability the lease imposes upon the lessee at the end of the lease term; the potential difference between the residual and realized values referred to in paragraph (k) of this section is excluded.

**(e) Total of payments.** The total of payments, with a description such as "the amount you will have paid by the end of the lease." This amount is the sum of the amount due at lease signing (less any refundable amounts), the total amount of periodic payments (less any portion of the periodic payment paid at lease signing), and other charges under paragraphs (b), (c), and (d) of this section. In an open-end lease, a description such as "you will owe an additional amount if the actual value of the vehicle is less than the residual value" shall accompany the disclosure.

12 C.F.R. pt. 1013.4.

70.     In short, the CLA and Regulation M together require that a lessor make explicitly clear to a lessee precisely what he must pay under the proposed lease, when he must pay it, and under what circumstances he must make such payments.

71.     But here, Defendant violated 15 U.S.C. § 1667a and 12 C.F.R. pt. 1013.4 in several respects by failing to make Plaintiff's payment obligations as clear as the statute and regulations require.

72.     To begin, section 1667a(4) requires "a clear and conspicuous" disclosure of "[t]he amount of other charges payable by the lessee not included in the periodic payments," including "a description of the charges."

73.     Defendant instead lists more than a dozen "fees" and "charges" in its Lease without explaining when and how these various "fees" and "charges" would be assessed. *See* Ex. B at 1-2.

74.     For example, under the heading "Other Charges (In addition to Lease & Fee Payments)," Defendant includes 3 separate fees totaling $95.87: an "estimated total" of Data

Processing Fees of $19.38; an Administrative Closing Fee of $64.49; and a State Fee of $12.00. *Id.* at 1.

76. First, there is no description accompanying these fees to explain *when* they must be paid.

77. Second, as to their amounts, for the Data Processing Fee in particular, the Lease states that Plaintiff will be charged "$3.00 per time" that data is processed, with no explanation of when and why such processing is necessary, and when the fee will be assessed—if at all. *Id.*

78.  Moreover, for the Data Processing Fee, the Lease provides only an "estimated total" of $19.38—a figure not divisible by 3, and which implies that Defendant will process Plaintiff's data 6.46 times during the Lease. *Id.*

79. Defendant fails to explain whether such data could be processed in fractions—like its "estimated total" implies—plus it likely over-estimates or under-estimates what Plaintiff ultimately will pay in Data Processing Fees, something the CLA specifically aims to prevent.

80. Also confusing is the laundry list of other "fees" and "charges" included farther down the first page of the Lease, among which Defendant includes a $25.00 Data Log Fee (apparently different from the Data Processing Fee earlier discussed), Expedited Shipping Fees "starting at" $19.35, a $4.99 Late Payment Charge that is "subject to any state restrictions," Labor Per Hour of $53.75, and a Chargeback Fee of "[t]he lesser of $30.00, or the maximum amount allowed by state law." *Id.*

81. These disclosures are inadequate and fail to comply with the CLA at section 1667a(4) because Defendant does not clearly and conspicuously explain (1) whether any or all of

14

these fees and charges would be assessed to Plaintiff, and under what circumstances, or (2) when such assessment would take place.

82.     While the Lease includes a disclaimer to "See your Lease terms below for an explanation of the fees charged by the service center (i.e., installation fee, removal fee, calibration fee, log full fee, and vehicle switch fee)," *id.*, a full reading of the Lease contract provides no greater clarity on how and when the above fees would be charged. *See generally* Ex. B.

83.     Plaintiff—or any other lessee—is left to guess how often a "Data Log" will be necessary (and therefore how many times he might be charged this fee); whether and how often "Expedited Shipping Fees" would be incurred; whether a "Late Payment Charge" in Ohio is subject to a state restriction beyond the $4.99 listed; whether and how often labor will be necessary at a cost of $53.75 per hour; and whether the maximum allowed by Ohio law for "Chargeback Fees" is different from the $30.00 listed in the Lease.

84.     For all these same reasons, Defendant's disclosure of the foregoing "fees" and "charges" also fails to meet the requirements of Regulation M at 12 C.F.R. pt. 1013.4(d).

85.     That is, Regulation M requires Defendant to disclose—separate and apart from the remainder of the Lease terms—"[t]he total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments."

86.     Defendant's disclosures in this regard not only are confusing, but many are sandwiched together without a proper description or itemization, and Defendant merely directs Plaintiff to "[s]ee your Lease terms below for an explanation of the fees charged by the service center (i.e., installation fee, removal fee, calibration fee, log full free, and vehicle switch fee)." Ex. B at 1.

87.    In other words, rather than comply with Regulation M by adequately *segregating* the fees and charges for which Plaintiff is responsible, Defendant clusters together more than a dozen potential fees and charges, and then directs Plaintiff to review the boilerplate fine print on the next several pages to decipher the purpose and potential imposition of such fees and charges.

88.    To the extent any such descriptions may be found scattered among the numerous pages of the Lease, Defendant still failed to meet its burden under the CLA and Regulation M because any such disclosures are *not* properly segregated from other information in the Lease, and thus *not* provided in a manner substantially similar to the applicable model form.

89.    Moving on, Regulation M at 12 C.F.R. pt. 1013.4(e) additionally requires that Defendant clearly disclose the "total of payments" owed under the Lease, using a description such as "the amount you will have paid by the end of the lease."

90.    The regulations continue: "This amount is the sum of the amount due at lease signing (less any refundable amounts), the total amount of periodic payments (less any portion of the periodic payment paid at lease signing), and other charges under paragraphs (b), (c), and (d) of this section." 12 C.F.R. pt. 1013.4(e).

91.    Defendant's Lease states that the "Total of Payments (The amount you will have paid by the end of the Lease, including sales tax and state mandated fees, if applicable)" is $840.27, *see* Ex. B at 1, but a closer inspection reveals inconsistencies with this figure such that it cannot possibly be accurate.

92.    The total "Amount Due at Lease Signing" is $80.62, plus the Lease shows total "monthly Lease payments" of $639.52, total "device protection plan fees" of $75.32, and total "Other Charges" of $95.87.

93.     But tallying these figures together results in a "total of payments" of $891.33—*not* $840.27.

94.     Moreover, located just beneath these disclosures on the first page of the Lease is a panoply of other categories of "fees" and "charges"—any combination of which necessarily pushes the true "total of payments" even higher than the $891.33 tallied *supra*.

95.     Thus, Plaintiff's financial obligation under the Lease is a minimum of $891.33, and potentially much greater in the event any other of a number of "fees" or "charges" are assessed his account.

96.     As a result, for Plaintiff's Lease, the "Total of Payments (The amount you will have paid by the end of the Lease, including sales tax and state mandated fees, if applicable)" is underreported by a minimum of $51.06 (the difference between $891.33 and $840.27)—and potentially tens, or even hundreds, of dollars more considering the many other "fees" and "charges" listed on the front page of the Lease.

97.     Also confusing, on the second page, Plaintiff's Lease states:

> The total amount you will pay for official fees and taxes over the term of your Lease, whether included with your recurring payments or assessed otherwise, is: $840.27. This disclosure is an estimate based on an estimate of $25.68 for sales tax and an estimate of $12.00 for other state mandated fees with regard to any ignition interlock program that you are enrolled in.

Ex. B at 2.

98.     Defendant thus discloses a "total amount" of "official fees and taxes" of more than $840, which is the same (incorrect) figure previously disclosed on the first page as the total amount of *all payments* owed under the lease—not simply the total of "official fees and taxes." *Compare* Ex. B at 1 *with id.* at 2.

99.     One or both of these disclosures necessarily is incorrect.

100.    Moreover, with regard to the provision on page 2, the first sentence conflicts with the second sentence, as the estimates in the second sentence of $25.68 for sales tax and $12.00 for "other state mandated fees" combine for a total of only $37.68, which is significantly less than the $840.27 "total amount" listed in the prior sentence. *See* Ex. B at 2.

101.    In sum, Defendant's multi-page Lease that Plaintiff signed is precisely what the CLA and Regulation M were enacted to avoid—a confusing litany of lease terms that are internally inconsistent, demand varying amounts of payment obligations, and cross-reference other pages, thus requiring the reader to flip back and forth between pages in hopes of understanding what he does, or does not, have to pay Defendant.

102.    And in short, Defendant's Lease fails to "focus[] the consumer's attention on key information," as the Board intended.

103.    Defendant's omissions here are significant: at the time Plaintiff signed the Lease, he was confused and unsure as to many of its financial terms, including (i) the total amount of money he owed under the agreement; (ii) the total amount of "official fees and taxes" he owed to Defendant; and (iii) whether and to what extent he may be assessed other fees and charges listed in the agreement such as the $3.00 "Data Processing Fee," $25.00 "Data Log Fee," and hourly labor charges of $53.75.

104.    Confusion of this magnitude is tantamount to deception on the part of Defendant; at signing, Plaintiff remained oblivious as to the true costs of the lease he signed. *See McQuinn v. Bank of Am., N.A.*, 656 F. App'x 848, 849 (9th Cir. 2016); *Clement v. Am. Honda Fin. Corp.*, 145 F. Supp. 2d 206, 210 (D. Conn. 2001).

105.    The harm suffered by Plaintiff is particularized in that the violative lease agreement was presented to him personally, regarded his personal obligations in connection with

the lease of ignition interlock equipment, and failed to properly give him statutorily-mandated disclosures to which he was entitled.

106.     Likewise, the CLA's disclosure provisions

> serve[] to protect a consumer's concrete interest in "avoid[ing] the uninformed use of credit," a core object of the TILA. These procedures afford such protection by requiring a creditor to notify a consumer, at the time he opens a credit account, of how the consumer's own actions can affect his rights with respect to credit transactions. A consumer who is not given notice of *his* obligations is likely not to satisfy them and, thereby, unwittingly to lose the very credit rights that the law affords him. For that reason, a creditor's alleged violation of each notice requirement, by itself, gives rise to a "risk of real harm" to the consumer's concrete interest in the informed use of credit.

*Strubel v. Comenity Bank*, 842 F.3d 181, 190-91 (2d Cir. 2016) (emphasis in original).

107.     No matter, that risk of real harm materialized here, as Plaintiff was unaware of the true costs associated with his lease of the ignition interlock device as a result of Defendant's inadequate disclosures.

108.     Had Plaintiff known of the true costs involved, he would have pursued other options to obtain the ignition interlock device he needed.

**WHEREFORE**, Plaintiff respectfully requests relief and judgment as follows:

A.     Determining that this action is a proper class action and designating him as class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.     Adjudging and declaring that Defendant violated 15 U.S.C. § 1667a and 12 C.F.R. pt. 1013.4 for its failure to provide Plaintiff or members of the proposed class requisite segregated disclosures concerning their leases of Defendant's ignition interlock devices;

C.     Awarding Plaintiff and members of the proposed class actual damages pursuant to 15 U.S.C. § 1667d(a) and 15 U.S.C. § 1640(a)(1), and/or statutory damages pursuant to 15 U.S.C. § 1667d(a) and 15 U.S.C. § 1640(a)(2)(B);

D.      Awarding Plaintiff and members of the proposed class their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1640(a)(3) and Rule 23 of the Federal Rules of Civil Procedure;

E.      Awarding Plaintiff and members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

F.      Awarding other and further relief as the Court may deem just and proper.

**TRIAL BY JURY**

Plaintiff is entitled to and hereby demands a trial by jury.


DATED:  August 24, 2020                    Respectfully submitted,

                                           */s/ H. Lee Thompson*
                                           H. Lee Thompson
                                           Ohio Bar #0033251
                                           The Thompson Law Firm Co. LPA
                                           3360 East Livingston Ave., Suite 2 B
                                           Columbus, OH 43227
                                           Tel: (614) 461-9000
                                           thomlaw@msn.com

                                           Jesse S. Johnson (to seek admission *pro hac vice*)
                                           Greenwald Davidson Radbil PLLC
                                           7601 N. Federal Hwy., Suite A-230
                                           Boca Raton, FL 33487
                                           Tel: (561) 826-5477
                                           jjohnson@gdrlawfirm.com

                                           *Counsel for Plaintiff and the proposed class*