## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| ANTHONY DOVER, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action 2:20-cv-04321-ALM-KAJ |
| | ) |
| CONSUMER SAFETY TECHNOLOGY, | ) Judge Marbley |
| LLC d/b/a INTOXALOCK , | ) |
| Defendant. | ) Magistrate Judge Jolson |

---

### DEFENDANT CONSUMER SAFETY TECHNOLOGY, LLC D/B/A INTOXALOCK'S MOTION TO DISMISS

---

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Consumer Safety Technology, LLC d/b/a Intoxalock ("Intoxalock") moves to dismiss Plaintiff's Complaint. In support of this Motion, Intoxalock relies upon and incorporates herein the arguments and authority in the supporting memorandum.  Intoxalock respectfully requests that the Court grant this Motion and enter an Order dismissing Plaintiff's Complaint, with prejudice, in its entirety.

Respectfully submitted,

*/s/ Aneca E. Lasley*
Joseph C. Weinstein (0023504)
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114
Tel: +1.216.479.8500  Fax: +1.216.479.8780
joe.weinstein@squirepb.com

Aneca E. Lasley (0072366)
Michele Noble (0072756)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 S. High Street
Columbus, OH 43215
Tel: +1.614.365.2700  Fax: +1.614.365.2499
aneca.lasley@squirepb.com
michele.noble@squirepb.com

Attorneys for Defendant Consumer Safety
Technology, LLC d/b/a Intoxalock

## MEMORANDUM IN SUPPORT

### I.     INTRODUCTION

For over twenty years, Intoxalock has assisted drivers in Ohio—like Plaintiff—who, as a result of a conviction for operating a vehicle under the influence, are required to install an ignition interlock device.[1]  This device is a breathalyzer that requires the driver to blow into a mouthpiece on the device before starting or continuing to operate the vehicle.  If the resultant blood-alcohol concentration exceeds the programmed concentration limit, the device prevents the vehicle from starting.

Intoxalock provides its ignition interlock devices for various terms pursuant to written lease agreements.  Here, Plaintiff entered into a lease agreement with Intoxalock in May 2020 for a nominal initial period of six months.  (*See* Compl., Ex. B [ECF 1-2] (hereinafter the "Lease").)  Following his early termination of the Lease in August 2020, Plaintiff filed this action alleging violations of the Consumer Leasing Act ("CLA"), 15 U.S.C. §§ 1667-1667(e), and its implementing regulation, Regulation M ("Reg. M"), 12 C.F.R. Part 1013.  Plaintiff alleges that Intoxalock provided confusing and insufficient payment disclosures in its ignition interlock device lease agreements.  (*See* Compl. ¶ 2.)  Plaintiff's Complaint, however, fails for two independent reasons.

First, Plaintiff lacks standing and this Court lacks subject matter jurisdiction over Plaintiff's claim.  Plaintiff fails to sufficiently plead that he suffered injury and, in fact, he

---

[1] In Ohio, ignition interlock devices are statutorily regulated for use by offenders convicted of driving while intoxicated.  *See* R.C. §§ 4510.43 to 4510.46; Ohio Admin. Code §§ 4501-45-01 to 4501-45-11.  Manufacturers who wish to lease or sell ignition interlock devices to Ohio residents are required to obtain an annual license from the Department of Public Safety.  *See* R.C. § 4510.45; Ohio Admin. Code § 4501-45-04.  In order to obtain the required license, manufacturers must provide a certification that their interlock devices will meet specific regulatory requirements that are designed to ensure security, safety and accuracy features (e.g., random breath sample retests after starting the vehicle and additional breath sample retests at random intervals thereafter for the duration of the travel).  Ohio Admin. Code § 4501-45-04.  Many states, including Ohio, require manufacturers to monitor the interlock devices for any breath sample that prevented an offender from starting the vehicle or any evidence that the offender has attempted to disable or tamper with the devices and to report any such events to the court within a statutorily-defined number of days of detection.  *See, e.g.*, R.C. § 4510.46; Ohio Admin. Code § 4501-45-01(S).

suffered none: He was charged and paid only the fees that were plainly disclosed in the Lease. With no injury-in-fact, Plaintiff lacks standing to bring this suit and this Court lacks subject matter jurisdiction. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016).

Second, where, as here, the Lease complies with the CLA and Reg. M, the Complaint fails to state claim upon which relief can be granted. The Lease is nearly identical to the model form included in Reg. M (*i.e.*, Model Form A-3, attached to Plaintiff's Complaint as Exhibit A), and clearly and conspicuously makes all required disclosures. (*See* Compl. ¶ 28, Ex. A [ECF 1-1].) As discussed below, the Lease is therefore compliant with the CLA and Reg. M as a matter of law. As a result, Plaintiff's claim for CLA and Reg. M violations is implausible on its face under *Twombly* and *Iqbal*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

For each of these two independent reasons, Intoxalock respectfully moves the Court to dismiss Plaintiff's Complaint in its entirety and with prejudice under Rules 12(b)(1) and 12(b)(6).

## II.    FACTUAL BACKGROUND

On or about May 18, 2020, Plaintiff signed a Lease for the installation of an ignition interlock breathalyzer device in his vehicle. (Compl. ¶ 33.) The Lease provided for an initial term of six months and fully disclosed the amount due at the lease signing, the bi-weekly lease payment amount, the bi-weekly device protection fee amount, total of payments, and other charges:

| Amount Due at Lease Signing | | Lease & Fee Payments | Other Charges (in addition to Lease & Fee payments) | | Total of Payments |
|---|---|---|---|---|---|
| First Lease payment (includes sales tax) | $45.68 | Your Lease payments and device protection fees will be withdrawn Bi-Weekly on every other Saturday of each month. | Data Processing Fee ($3.00 per time, estimated total) | $19.38 | (The amount you will have paid by the end of the Lease, including sales tax and state mandated fees, if applicable) |
| Device Fee | $0.00 | Your first Lease payment of $45.68 is due at Lease signing on 05/16/2020 followed by 13 payments of $45.68. | Shipping and Handling | $0.00 | |
| Delivery Fee | $0.00 | The total of your monthly Lease payments is $639.52 (includes sales tax). | Administrative Closing Fee | $64.49 | |
| Setup Fee | $29.56 | Your first device protection fee of $5.38 is due at Lease signing on 05/16/2020 followed by 13 payments of $5.38. The total of your device protection plan fees are $75.32 (includes sales tax). | State Fee | $12.00 | |
| Device Protection Fee | $5.38 | | FL ($12.00 Install) | | |
| Total | $80.62 | | Total | $95.87 | Total | $840.27 |

**Purchase Option at the end of Lease Term.**
You do not have the option to purchase the leased property at the end of the lease term.

**Other Important Terms.**
See your lease document for additional information on early termination, maintenance responsibilities, warranties, express shipping fees, late and default charges, lockout and logfull charges, vehicle switches, repair fees, and any security interest, if applicable.

| | | | |
|---|---|---|---|
| ARS Return Fee | $0.00 | Expedited Shipping Fee Starting At: | $19.35 |
| No Show Fee | $50.00 | Late Payment Charge | $4.99, subject to any state restrictions |
| Lockout Fee | $80.63 | Vehicle Switch Fee | $32.25 |
| Exchange Fee | $0.00 | Labor Per Hour | $53.75 |
| Early Cancellation Fee | $215.00 | Device Fee | $0.00 |
| Initial Replacement Fee | $26.88 | Chargeback Fee | The lesser of $30.00, or the maximum amount allowed by state law |
| Data Log Fee | $25.00 | Return Check Fee | $15.00 |
| Reset Calibration Fee | $43.00 | | |

See your Lease terms below for an explanation of the fees charged by the service center (i.e., installation fee, removal fee, calibration fee, log full fee, and vehicle switch fee).

(Compl. ¶¶ 36, 39-46, Ex. B [ECF 1-2].)  Moreover, Intoxalock charged Plaintiff exactly the disclosed fees and not a penny more.[2]  (*See* Account Statement.)

Congress passed the CLA in 1976, amending 1968's Truth in Lending Act ("TILA"), to assure that meaningful and accurate written disclosures of certain lease terms are made to consumers before they enter into personal property leases, so that they can more easily compare one lease with another, as well as compare the costs of leasing with the cost of buying on credit or the opportunity cost of paying cash.  *See* 15 U.S.C. § 1667, *et. seq.*; 12 C.F.R. § 1013.4.  As demonstrated below, Intoxalock made all required disclosures and Plaintiff was charged only what was disclosed.  He has not been injured, and Plaintiff's Complaint fails to state a claim upon which relief can be granted.

---

[2] In fact, it charged Plaintiff a penny less: Following his termination of the Lease, Plaintiff owed a balance of $0.01, which Intoxalock wrote off. (*See* Plaintiff's Account Statement, attached to the Declaration of Shannon J. Woods, Ex. 1, hereinafter the "Account Statement".)  As demonstrated herein, this Court may consider the Account Statement in its decision upon this motion.

## III.   LAW AND ARGUMENT

### A.   Since Plaintiff Suffered No Injury-In-Fact, His Complaint Should Be Dismissed For His Lack of Standing And This Court's Lack Of Subject Matter Jurisdiction.

#### 1.   Rule 12(b)(1) Standard

If a plaintiff lacks Article III standing, the Court lacks subject-matter jurisdiction over plaintiff's claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all" and "the only function remaining to the court is that of announcing the fact and dismissing the cause"); *State of Tenn. v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019) (If plaintiff lacks standing, "then the court lacks subject-matter jurisdiction" and "[w]hen a court lacks jurisdiction, it "cannot proceed at all in any cause.") "The 'irreducible constitutional minimum' of Article III standing consists of three elements." *Spokeo, Inc.*, 136 S. Ct. at 1547 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. The injury-in-fact element requires that the injury be both "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

A court must dismiss an action if it determines at any time that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing each standing element. *Spokeo*, 136 S. Ct. at 1547. Where "a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id*. (internal quotation marks and ellipses omitted). Moreover, "[t]hat a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they *personally* have been injured, not that injury has been suffered by

4

other, unidentified members of the class to which they belong." *Id*. at 1547 n.6 (internal citations, quotation marks, and ellipses omitted) (emphasis added).

Since Plaintiff lacks standing here, the Court need not reach the 12(b)(6) grounds for this motion, and should dismiss Plaintiff's Complaint with prejudice. *See Id*.; *Eike v. Allergan, Inc.*, 850 F.3d 315, 318 (7th Cir. 2017) (dismissing lawsuit with prejudice where plaintiffs failed to plead standing under *Spokeo*).

### 2. The Court Can Consider Plaintiff's Account Statement

This Court can consider Intoxalock's Account Statement for Plaintiff on Intoxalock's challenge to Plaintiff's standing. Even though the information in the Account Statement is intrinsic to Plaintiff's claims, was relied upon Plaintiff in his Complaint, and can be considered by the Court on a motion to dismiss, see footnote 5 below, on a standing challenge the Court is free to consider evidence as to its jurisdiction. *See MAO-MSO Recovery II, LLC v. Progressive Corp.*, No. 17-cv-686, 2018 U.S. Dist. LEXIS 145419, at *7 (N.D. Ohio Aug. 27, 2018) (holding that the court is free to weigh evidence as to the existence of its power to hear the case on a 12(b)(1) motion asserting that plaintiff lacked standing due to no injury-in-fact). With a factual challenge to the court's subject matter jurisdiction, no presumptive truthfulness applies to the factual allegations of the Complaint and the Court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case or lack thereof. *See Campbell v. Miller*, 835 F. Supp. 2d 458, 464 (S.D. Ohio 2011).

### 3. Plaintiff Lacks Article III Standing And Plaintiff's Complaint Should Be Dismissed

Here, Plaintiff fails to allege facts demonstrating that he suffered injury-in-fact from the supposed statutory violations about which he complains. He therefore lacks standing. *See Spokeo*, 136 S. Ct. at 1548-49 (explaining that a plaintiff cannot simply allege bare statutory violations, "divorced from any concrete harm, and satisfy the injury-in-fact requirement of

Article III.").  "Thus the analysis of whether the plaintiffs have standing to bring a statutory claim necessarily requires a determination of whether the plaintiffs were injured under the relevant statute."  *Brackfield & Assocs. P'ship v. Branch Banking & Tr. Co.*, 645 Fed. Appx. 428, 431 (6th Cir. 2016) (internal citations omitted).

While Plaintiff may conclusorily claim that the disclosure of Total Payments in the Lease was inaccurate (*see* Compl. ¶¶ 91-101), in reality, Intoxalock charged and Plaintiff paid only the amounts disclosed on the Lease.  (*Compare* Compl., Ex. B [ECF 1-2] *with* Account Statement.) Under these circumstances, no injury-in-fact resulted from the alleged violations.

Under the Lease, Plaintiff was charged the following fees, all of which were clearly and conspicuously disclosed:

- Lease Charge/Payment;
- Device Setup Fee;
- Device Protection Fee;
- Data Processing Fee;
- State Fee; and
- Administrative Closing Fee.

(*Compare* Compl., Ex. B [ECF 1-2] *with* Account Statement.)

On May 1, 2020, Intoxalock charged Plaintiff a total of $92.62, which included his first Lease payment of $45.68, his Setup Fee of $29.56, his State Fee of $12.00 and his first Device Protection Fee of $5.38.  (*See* Account Statement.)  Thereafter, Plaintiff only was charged on a bi-weekly basis, and ultimately paid, his Lease payments of $45.68 and Device Protection Fees of $5.38, and, a total of $9.69 for Data Processing Fees.  *Id.*  Plaintiff does not (and cannot) allege that Intoxalock charged him any fee or cost that was not fully disclosed.  Under these circumstances, no injury-in-fact exists.

Unable to identify any fee *actually* charged that the Lease did not conspicuously disclose, Plaintiff relies on other charges that he *might have incurred, but did not*.  (*See* Compl. ¶¶ 80, 83-84 (identifying a Data Log Fee, Shipping Fees, Late Payment Charge, Labor Per Hour Charge

and a Chargeback Fee).  Fees not charged cannot be the basis for injury-in-fact and standing.  *See, e.g.*, *Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209, 224-25 (3d Cir. 2004) (finding that lessee cannot challenge a lease fee not charged to lessee).  Where, as here, Plaintiff lacks standing, the Court lacks subject matter jurisdiction, *see State of Tenn.*, 931 F.3d 499, 507 (6th Cir. 2019), and the Complaint should be dismissed with prejudice*, see Eike*, 850 F.3d 315, 318.

> ### B. Plaintiff's Complaint Fails To State A Claim Upon Which Relief Can Be Granted And Therefore Should Be Dismissed.

> #### 1. Rule 12(b)(6) Standard

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal citations omitted).  To be plausible, a complaint must allege specific facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  The Court need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.  *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009).  "Importantly, 'a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.'" *Wellington Res. Grp. LLC v. Beck Energy Corp.*, 2013 U.S. Dist. LEXIS 167200, at *14 n.1 (S.D. Ohio Nov. 25, 2013) (citations omitted).

> #### 2. Plaintiff Fails To Plausibly Allege Violations of the CLA and Reg. M

Even if Plaintiff had Article III standing, his Complaint still fails to plausibly allege a violation of the CLA or Reg. M, as Intoxalock made all the requisite disclosures.

Reg. M requires that certain disclosures in a consumer lease be "segregated" from other information in the lease and that they be made "clearly and conspicuously in writing," 12 C.F.R. §§ 1013.3(a), 1013.3(a)(2), as Intoxalock did here.

Although lessors are not required to use the model forms in Appendix A to 12 C.F.R Part 1013, lessors adopting the model forms *are deemed to be in compliance with the regulation*.  *See* Supplement I, Part 1013 – Official Interpretations, Commentary to Appendix A, effective Jan. 1, 2020 (hereinafter "Official Comments") ("Although use of the model forms is not required, lessors using them properly will be deemed to be in compliance with the regulation.").  Here, the Lease effectively adopts the model form and includes all required disclosures; it therefore complies with the CLA and Reg. M.

A comparison of Model Form A-3[3] with the Lease says it all:

Appendix A, Model Form A-3:

| Amount Due at Lease Signing | Monthly Payments | Other Charges (not part of | Total of Payments |
|---|---|---|---|
| First monthly payment $ _____ | Your first monthly payment of $ _____ | Pick-up fee  $ _____ | (The amount you will have paid by the end of the lease) |
| Refundable security deposit $ _____ | is due on _____, followed by | _____  $ _____ | |
| Delivery/Installation fee $ _____ | _____ payments of $ _____ due on | Total  $ _____ | $ _____ |
| _____ $ _____ | the _____ of each month. The total of your | | |
| Total $ _____ | monthly payments is $ _____. | | |

**Purchase Option at End of Lease Term.** [You have an option to purchase the leased property at the end of the lease term for $ _____ [and a purchase option fee of $ _____ ].] [You do not have an option to purchase the leased property at the end of the lease term.]

**Other Important Terms.** See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

---

[3] Plaintiff attaches Model Form A-3 as Exhibit A to Plaintiff's Complaint, and agrees that Model Form A-3 applies to the Lease.  (Compl. ¶ 28, Ex. A, [ECF 1-1].)

The Lease:

| Amount Due at Lease Signing | | Lease & Fee Payments | Other Charges (in addition to Lease & Fee payments) | | Total of Payments |
|---|---|---|---|---|---|
| First Lease payment (includes sales tax) | $45.68 | Your Lease payments and device protection fees will be withdrawn Bi-Weekly on every other Saturday of each month. | Data Processing Fee ($3.00 per time, estimated total) | $19.38 | (The amount you will have paid by the end of the Lease, including sales tax and state mandated fees, if applicable) |
| Device Fee | $0.00 | Your first Lease payment of $45.68 is due at Lease signing on 05/16/2020 followed by 13 payments of $45.68. | Shipping and Handling | $0.00 | |
| Delivery Fee | $0.00 | | Administrative Closing Fee | $64.49 | |
| Setup Fee | $29.56 | The total of your monthly Lease payments is $639.52 (includes sales tax). | State Fee | $12.00 | |
| Device Protection Fee | $5.38 | Your first device protection fee of $5.38 is due at Lease signing on 05/16/2020 followed by 13 payments of $5.38. The total of your device protection plan fees are $75.32 (includes sales tax). | FL ($12.00 Install) | | |
| Total | $80.62 | | Total | $95.87 | Total | $840.27 |

**Purchase Option at the end of Lease Term.**
You do not have the option to purchase the leased property at the end of the lease term.
**Other Important Terms.**
See your lease document for additional information on early termination, maintenance responsibilities, warranties, express shipping fees, late and default charges, lockout and logfull charges, vehicle switches, repair fees, and any security interest, if applicable.

| ARS Return Fee | $0.00 | Expedited Shipping Fee Starting At: | $19.35 |
|---|---|---|---|
| No Show Fee | $50.00 | Late Payment Charge | $4.99, subject to any state restrictions |
| Lockout Fee | $80.63 | Vehicle Switch Fee | $32.25 |
| Exchange Fee | $0.00 | Labor Per Hour | $53.75 |
| Early Cancellation Fee | $215.00 | Device Fee | $0.00 |
| Initial Replacement Fee | $26.88 | Chargeback Fee | The lesser of $30.00, or the maximum amount allowed by state law |
| Data Log Fee | $25.00 | Return Check Fee | $15.00 |
| Reset Calibration Fee | $43.00 | | |

See your Lease terms below for an explanation of the fees charged by the service center (i.e., installation fee, removal fee, calibration fee, log full fee, and vehicle switch fee).

As in the Model Form, all of the categories of disclosures required to be segregated by Reg. M are segregated and appear on the first page of the Lease. Substantively, Reg. M requires six segregated disclosures here[4], but Plaintiff alleges violations of only four. (*See* Compl. ¶ 69.) Regardless, the Lease complies with all six required disclosures:

### a. Amount due at lease signing, § 1013.4(b):

The Lease fully complies, disclosing in the first column entitled "Amount Due at Lease Signing" the First Lease Payment, Setup Fee, and Device Protection Fee, for a total of $80.62. Indeed, Plaintiff was invoiced on May 1, 2020, for these fees due at signing plus the separately

---

[4] Reg. M also requires several additional segregated disclosure that are inapplicable to the Lease, and thus, are not required here. *See* § 1013.3(a) ("A lessor shall make the disclosures required by § 1013.4, *as applicable*) (emphasis supplied); Official Comments (noting that lessors "may delete any disclosures that are inapplicable to a transaction without losing the Act's protection from liability"). Disclosures inapplicable to the Lease include: § 1013.4(f) (Payment calculation in motor vehicle leases); § 1013.4(g)(2) (Early termination notice in motor vehicle leases); § 1013.4(h)(3) (Notice of wear and use standard in a motor vehicle lease); and § 1013.4(m)(1) (Disclosures if lessee is liable at end of lease for the difference between residual value and realized value).

9

disclosed Other Charge (in the Lease box's third column) of a $12.00 State Fee for device installation, payable to the State of Florida.  (*See* Account Statement.[5])

### b.    Lease and Fee Payments, § 1013.4(c):

Reg. M § 1013.4(c) requires the "number, amount, and due dates or period of payments scheduled under the lease, and the total amount of the periodic payments."  The Lease fully complies (*see* Compl., Ex. B [ECF 1-2], second column,  "Lease & Fee Payments"), accurately disclosing the number (14), amount ($45.68), due dates (Bi-weekly, every other Saturday) and the total amount of the periodic payments ($639.52) over the six month initial period, as well as the device protection plan fees, in the segregated lease section.

Indeed, Plaintiff was invoiced $45.68 on May 30, June 13, June 27, July 11, July 25 and August 08, 2020—the exact amount disclosed on the Lease.  (Account Statement.)  Plaintiff was also invoiced $5.38 for the device's protection plan consistent with the disclosures on the Lease.  *Id.*  Even though he terminated the Lease early, Plaintiff was charged only the disclosed amounts during the time it was in effect.  *Id.*

---

[5] "Although a plaintiff is not required to attach to his complaint documents upon which [his] claim is based, a defendant may introduce pertinent documents if the plaintiff fails to do so. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Thomas v. Equifax Info. Servs., LLC*, No. 3:19-cv-286, 2020 U.S. Dist. LEXIS 73344, at *6 (S.D. Ohio Apr. 27, 2020) (internal quotations and citations omitted).  The Account Statement is such a document because it contains the billing and payment information both referred to in Plaintiff's Complaint (*see* Compl. ¶ 50, ¶¶ 40-48) and central to Plaintiff's claims. *See Harris v. Karl*, No. 2:05-cv-1133, 2006 U.S. Dist. LEXIS 63469, at *7 (S.D. Ohio Sept. 6, 2006).

Moreover, this Court can consider the Account Statement under Rule 12(b)(6) without converting this motion to a motion for summary judgment.  *See Askew v. Crown Mgmt., LLC*, Case No. 16-cv-00129, 2017 U.S. Dist. LEXIS 65171, at *3-5 (N.D. Miss. Apr. 27, 2017) (holding that, in a billing dispute, court could consider credit card account statement attached to motion to dismiss without converting to a summary judgment motion); *Swanson v. Bank of Am.*, 566 F. Supp. 2d 821, 823 (N.D. Ill. 2008) (holding that court could consider account statement attached to motion to dismiss without converting to a motion to dismiss); s*ee also Harris*, 2006 U.S. Dist. LEXIS 63469, at *7 (citing *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) and *Yeary v. Goodwill Industries-Knoxville*, 107 F.3d 443, 445 (6th Cir. 1997)); *Wellington Res. Grp. LLC*, No. 2:12-cv-104, 2013 U.S. Dist. LEXIS 167200, at *14 n.1 (S.D. Ohio Nov. 25, 2013).

###### c.       Other Charges, § 1013.4(d):

Reg. M § 1013.4(d) requires the disclosure of the "total amount of other charges payable to the lessor, itemized by type and amount" and includes the amount of any liability the lease imposes at the end of the lease term.  Only "disclosure of charges that are anticipated by the parties incident to the normal operation of the lease agreement" are required.  Official Comments to § 1013.4(d).  The Lease here fully complies, disclosing in its "Other Charges" column all other charges incident to the normal operation of the lease agreement, including a Data Processing Fee (estimated total for six month term at $19.38), an Administrative Closing Fee ($64.49) and a State Fee ($12.00), all of which were sufficiently disclosed and described.

The Administrative Closing Fee and the State Fee were charged as disclosed.  (*See* Account Statement.)  The Administrative Closing Fee is further described in Section 4.4 of the Lease: "This administrative closing fee will be assessed when your de-installation appointment is scheduled by us or when the Device is returned to us, whichever occurs first."  The State Fee also is further described in Section 4.4: "If we are required to do so by applicable state laws and/or regulations, we will charge and collect any mandated state fees. . . ."

The Data Processing Fee is disclosed as an estimate, which is explicitly permitted under the CLA and Reg. M if an amount is unknown or unavailable. *See* 15 U.S.C. § 1667a; 12 C.F.R § 1013.3(d) ("If an amount or other item needed to comply with a required disclosure is unknown or unavailable . . . the lessor may use a reasonable estimate that is based on the best information available to the lessor [and] clearly identified as an estimate").

Since the Data Processing Fees could not be known at the time of the lease, an estimate is proper under the CLA and Reg. M.  15 U.S.C. § 1667a; 12 C.F.R § 1013.3(d); *see also Gaydos v. Huntington Nat. Bank*, 941 F. Supp. 669, 675 (N.D. Ohio 1996) (holding that lessor has no obligation to disclose items not known at the time of the lease).  Assessment of these fees

depends on the lessee's DUI compliance: How often Intoxalock may be required to gather data in order to report to the court failed breath tests or tampering with the device is outside of Intoxalock's control.[6]  And the actual charges were consistent with the estimate: Between May 1 and August 10, 2020, Plaintiff was invoiced $9.69 for Data Processing Fees, one-half of the disclosed estimate of $19.38.  (*See* Account Statement.)

Plaintiff incorrectly alleges that the CLA and Reg. M require lessors to identify *when* the "Other Charges" will be due.  (Compl. ¶ 74-79.)  The CLA and Reg. M have no such requirement.  What is required is a disclosure of the amount and description of such other charges, 15 U.S.C. § 1667a(4), which the Lease does.  (*See* Compl., Ex. B [ECF 1-2] at p. 3, § 4; *see also* Reg. M § 1013.4(d).)  Reg. M § 1013.4(d) does not require lessors to identify the date that Other Charges will be assessed.  Rather, it requires only that the Other Charges are "itemized by type and amount."  *Id.*  Indeed, the Model Form demonstrates that no disclosure as to timing of "Other Charges" is necessary; it is not provided for anywhere in the Model Form.

Plaintiff incorrectly alleges that the Lease's inclusion of "Other Important Terms" in the segregated section (lower box) violates the CLA and Reg. M.  (Compl. ¶ 80.)  The Official Comments to § 1013.4(d) demonstrate otherwise.  A lessor can choose to list certain charges, including those about which Plaintiff complains, exactly as Intoxalock does without violating either § 1013.4(d) or § 1013.3(a)(2) [the segregated disclosure rule].  *See* Official Comments to § 1013.4(d).  Thus, Intoxalock's inclusion of the "Other Important Terms" directly under the segregated columns did not run afoul of the CLA or Reg. M.

Finally, Plaintiff alleges that certain "Other Important Terms" that were never charged to Plaintiff were not sufficiently described.  (Compl. ¶¶ 46, 73, 80-81 (allegations relating to a "No Show Fee," "Lockout Fee," "Early Cancellation Fee," "Initial Replacement Fee," "Reset

---

[6] Lessees acknowledge and consent to Intoxalock releasing data and other information to any county, state, federal or judicial official, or law enforcement as necessary, including test results, lockout events, and GPS data regarding the location of the vehicle.  (Compl., Ex. B [ECF 1-2], at § 13.)

Calibration Fee," "Expedited Shipping Fee," and "Labor Per Hour" charge).  However, the Lease fully describes these charges.  (*See* Lease, [ECF 1-2], P. 2-3, ¶¶ 2, 3, 7, 4.3.)

### d.    Total of Payments, § 1013.4(e):

Reg. M Section 1013.4(e) requires disclosure of the total of payments, defined as the "sum of the amount due at lease signing (less any refundable amounts), the total amount of periodic payments (*less any portion of the periodic payment paid at lease signing*), and other charges under paragraphs (b), (c) and (d) of this section."  (emphasis added.)  The Lease here is fully compliant: Consistent with the Model Form, the Lease discloses, for the then expected initial six month term, $840.27 in total payments, which is comprised of the total due at lease signing of $80.62, plus the amount of Lease payments (less the one payment due at lease signing) of $593.84 [$45.68 times 13 payments], plus the amount of Device Protection fees of $69.94 [$5.38 times 13 payments], plus the itemized Other Charges of $95.87. [7]  (Compl., Ex. B [ECF 1-2].)

### e.    Affirmative statement of purchase option, § 1013.4(i)(1):

The Lease is fully compliant: It discloses that "You do not have the option to purchase the leased property at the end of the lease term" in the segregated section.

### f.    Affirmative statement referencing nonsegregated disclosures, § 1013.4(j):

The Lease is fully compliant: Reg. M § 1013.4(j) requires a "statement that the lessee should refer to the lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any

---

[7] Plaintiff incorrectly alleges that the Lease disclosure of Total Payments is underreported by $51.06.  (Compl. ¶ 96.) Plaintiff's calculation incorrectly double counts the Initial Bi-Weekly payment ($45.68) and initial device protection fee ($5.38), in both the columns for Paid at Lease Signing and in the Monthly Lease Payments Total.

security interest, if applicable."[8]  Consistent with the Model Form, the Lease does just that (*see* lower box on first page), and then goes even further than Reg. M requires by making additional segregated disclosures.  Plaintiff has failed to plausibly allege a violation of the CLA and Reg. M with respect to the required segregated disclosures.

### g.    Official Fees and Taxes, § 1013.4(n):

Plaintiff incorrectly alleges that the Lease's disclosure of total taxes did not comply with the CLA and Reg. M.  (Compl. ¶ 103.)  The CLA only requires that "all taxes to be paid in connection with the lease be disclosed" – they do not have to be itemized.  *Kennedy v. BMW Fin. Servs., N.A.*, 363 F. Supp. 2d 110, 121 (D.C. Conn. 2005); *see also Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1412 (N.D. Ill. 1996) (rejecting challenge to tax disclosure).  Here, the Lease provides the required disclosure: an "estimate of $25.68 for sales tax and an estimate of $12.00 for other state mandated fees . . . ."  (Compl., Ex. B [ECF 1-2], P. 2.)  Thus, Plaintiff's total taxes were disclosed and Plaintiff was charged consistent with the amount disclosed.

Finally, Plaintiff attempts to allege a violation of the CLA based on his alleged subjective assertions of "confusion."  (Compl. ¶¶ 103-04.)  Plaintiff's subjective understanding, however, is not the standard.

To determine compliance with the CLA and Reg. M, the focus is on whether the required disclosures are made and whether they are clear and conspicuous.  As demonstrated above, the required disclosures have been made. "Clear and conspicuous" refers to the mode of presentation, not whether the disclosures are comprehensible to a particular plaintiff.  *Channell v. Citicorp Nat'l Servs*, 89 F.3d 379, 382 (7th Cir. 1996).  "So long as a disclosure is visible, it has

---

[8] Plaintiff conclusorily, yet incorrectly, alleges that the Lease unlawfully directs the Lessee to other terms in the Lease, outside of the segregated disclosures, to provide more information on some of the other charges.  (Compl. ¶ 86.)  The Model Form supplies identical language directing the lessee to other sections of the lease. Reg. M § 1013.4(j).

satisfied the 'clear and conspicuous manner' requirement of § 1667 of the Consumer Leasing Act, even if it is incomprehensible to the average consumer." *Schmidt v. Nissan Motor Acceptance Corp.*, 104 F. Supp. 2d 955, 957 (N.D. Ill. 2000) (citing *Channell*, 89 F.3d at 382). In *Schmidt*, the court held that plaintiff's allegations of confusion were not enough by themselves to survive a Rule 12(b)(6) motion. *Id*.; *See also Palmer v. Champion Mortg*., 465 F.3d 24, 28-29 (1st Cir. 2006) (holding that TILA disclosures are reviewed for an objective reasonableness, rather than a subjective understanding, and the focus is on the text of the disclosures, rather than plaintiffs' descriptions of their subjective understandings).

The Supreme Court's direction in *Milholin* is also instructive:

The concept of 'meaningful disclosure' that animates TILA . . . cannot be applied in the abstract. *Meaningful* disclosure does not mean *more* disclosure. Rather it describes a balance between 'competing considerations of complete disclosure . . . and the need to avoid [informational overload]. . . . And striking the balance is an empirical process that entails investigation into consumer psychology and that presupposes broad experience with credit practices. Administrative agencies are simply better suited than courts to engage in such a process.

*Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568-69 (1980) (emphasis in original). Here, the Model Form is the disclosure format that the federal administrative agency, the Bureau of Consumer Financial Protection, has deemed sufficient for consumer notification. *See also Parry v. Ford Motor Credit Co.*, 575 F. Supp. 204, 207 (S.D. Ohio 1983); *Gaydos v. Huntington Nat. Bank*, 941 F. Supp. 669, 672 (N.D. Ohio 1996) (the CLA "imposes no substantive requirements of lease terms . . . [i]nstead it merely requires adequate disclosure of lease terms."). Thus, when a lessor follows the Model Form, as Intoxalock has done here, the Lease must be deemed compliant—as is the explicit direction of the Official Comments. Official Comments ("Although use of the model forms is not required, lessors using them properly will be deemed to be in compliance with the regulation.").

## IV.     CONCLUSION

For the reasons stated herein, Defendant respectfully requests that the Court enter an Order dismissing Plaintiff's Complaint, with prejudice, in its entirety.

Respectfully submitted,

*/s/ Aneca E. Lasley*
Joseph C. Weinstein (0023504)
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114
Tel: +1.216.479.8500  Fax: +1.216.479.8780
joe.weinstein@squirepb.com

Aneca E. Lasley (0072366)
Michele Noble (0072756)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 S. High Street
Columbus, OH 43215
Tel: +1.614.365.2700  Fax: +1.614.365.2499
aneca.lasley@squirepb.com
michele.noble@squirepb.com

Attorneys for Defendant Consumer Safety
Technology, LLC d/b/a Intoxalock

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 8, 2020, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to:


H. Lee Thompson
The Thompson Law Firm Co. LPA
3360 East Livingston Ave., Suite 2 B
Columbus, Ohio 43227
Tel:  (614) 461-9000
thomlaw@msn.com

Jesse S. Johnson
Greenwald Davidson Radbil PLLC
7601 N. Federal Hwy., Suite A-230
Boca Raton, FL 33487
Tel:  (561) 826-5477
jjohnson@gdrlawfir.com

Attorneys for Plaintiff


<div style="margin-left:40%;">

*/s/ Aneca Lasley*
Attorney for Defendant Consumer Safety
Technology, LLC d/b/a Intoxalock

</div>