**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY DOVER** | : | |
| | : | **Case No. 20-cv-04321** |
| **Plaintiff,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Jolson** |
| **CONSUMER SAFETY TECHNOLOGY,** | : | |
| **LLC d/b/a INTOXALOCK** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

## I.      INTRODUCTION

This matter comes before the Court on Defendant Consumer Safety Technology, LLC d/b/a Intoxalock ("Intoxalock") Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). (ECF No. 9). Plaintiff Anthony Dover opposes. (ECF No. 16). For the reasons stated below, Defendant's Motion to Dismiss is **GRANTED**. (ECF No. 9).

## II.      BACKGROUND

Plaintiff Anthony Dover brought this putative class action against Defendant Intoxalock under the Consumer Leasing Act (CLA"), 15 U.S.C. § 1667, and its implementing regulations, 12 C.F.R. § 1013, *et seq.* ("Regulation M") on August 24, 2020. (ECF No. 1). Defendant Intoxalock leases its ignition interlock devices through the use of "consumer leases"[1] to lessees.[2] On May 18, 2020, Defendant installed an ignition interlock device in Mr. Dover's vehicle. In connection with

---

[1] "The term 'consumer lease' means a contract in the form of a lease or bailment for the use of personal property by a natural person *for a period of time exceeding four mo*nths, and for a total contractual obligation not exceeding $50,000, primarily for personal, family, or household purposes, whether or not the lessee has the option to purchase or otherwise become the owner of the property at the expiration of the lease, except that such term shall not include any credit sale as defined in section 1602(g) of this title. Such term does not include a lease for agricultural, business, or commercial purposes, or to a government or governmental agency or instrumentality, or to an organization." 15 U.S.C. § 1667(1).
[2] "The term 'lessee' means a natural person who leases or is offered a consumer lease." 15 U.S.C. § 1667(2).

that installation, Plaintiff signed the lease at issue here ("Lease"). Plaintiff contends that Defendant violated the CLA and Regulation M in multiple respects by failing to make Plaintiff's payment obligations as "clear and conspicuous" as the statute and regulation require. (*Id.*). Defendant moves to dismiss. (ECF No. 9).

## A. The Lease

The Lease is the subject of the parties' dispute, so a detailed description of the document is necessary. The Lease itself is a multi-page document. The first page contains subdivided tables with fees and charges. The remaining pages contain additional information on the Lease terms and conditions. Much of the parties' arguments focus on the first page of the Lease. The first page of the Lease is subdivided into two sections, the upper portion and the lower portion. The upper portion, in turn, is further subdivided into four columns, summarized below.

The first column in the upper portion is titled "Amount Due at Lease Signing." It lists four charges: (1) First Lease payment (including sales tax) of $45.68; (2) Device Fee of $0.00; (3) Delivery Fee of $0.00; (4) Setup Fee of $29.56; and (5) Device Protection Fee of $5.38. The sum of these parts is listed $80.62.

The second column in the upper portion is titled "Lease & Fee Payments." It sets forth two independent payments, withdrawn bi-weekly every other Saturday. It requires $45.68 bi-weekly payments, for a total of $639.52, including sales tax. The device protection fee requires a $5.38, for a total of $75.32, including sales tax. The most important point here is that the Lease requires the first Lease payment and device protection fee payments to be paid upon Lease signing. Thus, after signing, there were thirteen—not fourteen—remaining Lease and device protection fee payments.

The third column in the upper portion is titled: "Other Charges (In addition to Lease & Fee payments)." It includes four payments: (1) Data Processing Fee ($3.00 per time), with an estimated total of $19.38; (2) Shipping and Handling of $0.00; (3) Administrative Closing Fee of $64.49; and (4) State Fee of $12.00. The total of these "Other Charges" is listed as $95.87.

The last column in the Lease's upper portion is titled "Total of Payments." It contains a parenthetical description stating: "(The amount you will have paid by the end of the Lease, including sales tax and state mandated fees, if applicable)." Defendant provides a total of $840.27.

Below the upper portion of the Lease are two subsections. The first, which is not the subject of the parties' dispute, is titled, "Purchase Option at the end of Lease Term." Below the title is a brief sentence informing the lessee he does not have the option to purchase the leased property at the end of the lease term.

More important is the second subsection, titled, "Other Important Terms." Below the title is the following sentence: "See your lease document for additional information on early termination, maintenance responsibilities, warranties, express shipping fees, late and default charges, lockout and logfull charges, vehicle switches, repair fees, and any security interest, if applicable." (ECF No. 1-2 at 2).

Under that is a four-column table listing fifteen fees and charges. Those charges are each given a general description or title, followed by a monetary amount: (1) ARS No Return Fee ($0.00); (2) No Show Fee ($50.00); (3) Lockout Fee ($80.63); (4) Exchange fee ($0.00); (5) Early Cancellation Fee ($215.00); (6) Initial Replacement Fee ($26.88); (7) Data Log Fee ($25.00); (8) Reset Calibration Fee ($43.00); (9) Expedited Shipping Fee ($19.35); (10) Late Payment Charge ($4.99, subject to any state restrictions); (11) Vehicle Switch Fee ($32.25); (12) Labor Per Hour

($53.75); (13) Device Fee ($0.00); (14) Chargeback Fee (The lessor of $30.00, or the maximum amount allowed by state law); and (15) Return Check Fee $15.00). (*Id.*).

Just below the table is a sentence that reads: "See your Lease terms below for an explanation of the fees charged by the service center (i.e., installation fee, removal fee, calibration fee, log full fee, and vehicle switch fee).

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Although the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). In short, the plaintiff's complaint "must be enough to raise a right to relief above the speculative level."

Courts agree that the CLA does not require simple language, so long as the required disclosures are visible. *Schmidt v. Nissan Motor Acceptance Corp.*, 104 F. Supp. 2d 955, 957 (N.D. Ill. 2000) ("[T]he Consumer Leasing Act, which does not require that lease disclosures be comprehensible to the average consumer"); *Channell v. Citicorp Nat. Servs., Inc.*, 89 F.3d 379,

382 (7th Cir. 1996) ("'Manner' refers to the mode of presentation, not the degree of comprehension.").

## IV. LAW & ANALYSIS

### A. Standing[3]

Standing is an Article III principle: without standing, a federal court cannot exercise jurisdiction because there is no case or controversy. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing requires three elements: (1) an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* The party invoking federal jurisdiction bears the burden of establishing these elements. At the motion to dismiss stage "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'"

Here, Defendant claims that Plaintiff fails to allege facts demonstrating that he suffered injury-in-fact from the alleged statutory violations. In particular, Defendant seeks dismissal for lack of standing, maintaining that Plaintiff was charged for and paid only the fees that were disclosed clearly and conspicuously in the Lease. Thus, no injury-in-fact resulted since Intoxalock charged only the amounts disclosed on the Lease.[4]

---

[3] On June 28, 2021, Defendants submitted supplemental authority in light of the Supreme Court's decision *TransUnion LLC v. Ramirez*, No. 20-297, 2021 U.S. LEXIS 3401, at *23 (June 25, 2021). This Court does not find that *Ramirez* impacts the standing analysis given that it reaffirms existing standing principles, i.e., "Only plaintiffs concretely harmed by a defendant's statutory violation have Article III standing to seek damages against that private defendant in federal court." (*Id.*).

[4] Defendant explains that Plaintiff was charged the following fees: (1) Lease Charge/Payment ($45.68); (2) Device Setup Fee ($29.56); (3) Device Protection Fee ($5.38); (4) Data Processing Fee ($9.69); (5) State Fee ($12.00); and (6) Administrative Closing Fee. Defendant argues that no injury-in-fact exists because Plaintiff does not allege that Intoxalock charge him any fee or cost that was not fully disclosed

This Court finds that Mr. Dover has standing. The TILA is a remedial consumer-protection statute aimed at "assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). What is more, where Congress confers a procedural right to protect a concrete interest, a violation of the procedure may demonstrate a sufficient risk of real harm, without the need to allege any additional harm. *Strubel v. Comenity Bank*, 842 F.3d 181, 190–91 (2d Cir. 2016). Accordingly, this Court finds that Mr. Dover has standing exists as the Plaintiff alleged sufficiently a disclosure violation that is meant to protect an individual's concrete interests.

## B. The Consumer Leasing Act ("CLA") & Regulation M

Congress enacted the Consumer Leasing Act ("CLA"), 15 U.S.C. §§ 1667-1667e in 1977 to extend the disclosure requirements under the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* The CLA itself requires a lessor to make certain disclosures in a consumer's lease "in a clear and conspicuous" manner, including the following:

> (1) A brief description or identification of the leased property;
> (2) The amount of any payment by the lessee required at the inception of the lease;
> (3) The amount paid or payable by the lessee for official fees, registration, certificate of title, or license fees or taxes;
> (4) The amount of other charges payable by the lessee not included in the periodic payments, a description of the charges and that the lessee shall be liable for the differential, if any, between the anticipated fair market value of the leased property and its appraised actual value at the termination of the lease, if the lessee has such liability;
> . . . .
> (9) The number, amount, and due dates or periods of payments under the lease and the total amount of such periodic payments.

> 15 U.S.C. § 1667a.

6

Regulation M expands these statutory requirements. It is a disclosure-driven regulation, covering certain consumer leases for a term exceeding four months. A brief summary of Regulation M requirements is useful. Below, this Court summarizes the following requirements: (1) the clear-and-conspicuous standard; and (2) the segregation of certain disclosures.

### 1. Clear & Conspicuous Standard

If a lessor is required to make a disclosure pursuant to § 1013.4, then the disclosure must be made "clearly and conspicuously," a term interpreted to mean "reasonably understandable." 12 C.F.R. § 1013.4 The disclosures must be presented in a way that does not obscure the relationship of the terms to each other. This is a fairly low threshold, with the Official interpretation requiring that the disclosures must be legible, regardless of whether the lease is typewritten or handwritten.

In the instant lawsuit, Mr. Dover alleges that the Lease violates the CLA and Regulation M because the disclosures fail clearly and conspicuously to explain: (1) whether any or all of the fees and charges listed would be assessed to Plaintiff, and under what circumstances; or (2) when such assessment would take place.

### 2. Segregated Disclosures

Section 1013.3(a)(2) requires the segregation of ten of the twenty required disclosures.[5] "Segregation" means that these ten disclosures, where applicable, must be placed separately from other information and can only contain directly related information. A lessor may disclose other information in a nonsegregated fashion, but any nonsegregated disclosure cannot be "stated, used,

---

[5] (1) Amount due at lease signing or delivery, 1013.4(b); (2) Payment schedule and total amount of periodic payments, 1013.4(c); (3) Other charges, 1013.4(d); (4) Total of payments, 1013.4(e); (5) Payment calculation, 1013.4(f); (6) Early termination notice, 1013.4(g)(2); (7) Notice of wear and use standard, 1013.4(h)(3); (8) End of lease term, 1013.4(i)(1); (9) Statement referencing nonsegregated disclosures, 1013.4(j); and (10) Rent and other charges, 1013.4(m)(1).

or placed so as to mislead or confuse the lessee or contradict, obscure, or detract attention from any [required] disclosure." 12 CFR 1013.3.

To assess compliance with the segregation rule, the Official Interpretation of 3(a)(2) looks for three things: (1) the location of the disclosures on the lease; (2) whether there is additional information among segregated disclosures; and (3) if the segregated disclosures are substantially similar to the model form.

First, as to location, Regulation M gives the lessee considerable deference when deciding where on the lease the ten required segregated and the non-segregated disclosures are placed. What matters is that all disclosures are disclosed contemporaneously. Once this requirement is fulfilled, the segregated disclosures may, for example, be provided on a separate document while the non-segregated disclosures are provided in the lease contract. Alternatively, all disclosures may be provided in a separate document or in the lease contract. Again, the touchstone is that these discloses are provided at the same time. Second, the segregated disclosures must only contain the information required or permitted to be included among the segregated disclosures. This might be referred to as the "no more, no less" rule. Third, the content, format, and heading for the segregated disclosures must be "substantially similar" to those contained in the model forms. Examples of acceptable changes include rearranging the sequence of nonsegregated disclosures. Any changes should be minimal and should not affect the substance or clarity of the disclosures.

## C. Failure to State a Claim Analysis

Turning to the arguments in Mr. Dover's Complaint, Plaintiff alleges that Intoxalock's Lease failed to comply with Regulation M by clustering rather than segregating the potential fees and charges. Moreover, Plaintiff argues that the Lease is generally difficult to read, forcing the lessee to wade through boilerplate fine print to decipher the purpose and potential imposition of

fees and charges. (ECF No. 1 at 16). To the extent any such descriptions may be found scattered among the numerous pages of the Lease, Defendant still failed to meet its burden under the CLA and Regulation M because any such disclosures are not properly segregated from other information in the Lease, and thus not provided in a manner substantially similar to the applicable model form.

Defendant seeks dismissal, contending that because the Lease complies with the CLA and Reg. M, the Complaint fails to state a claim upon which relief can be granted.

The parties disagree on whether the following sections of the Lease comply with the clear-and-conspicuous standard: (1) "Other Important Terms" in the lower portion of the Lease's first page; (2) "Other Charges" in the upper portion's third column; and (3) "Total of Payments" in the upper portion's last column. Defendant seeks dismissal, contending that the Lease is nearly identical to the model form included in Reg. M and clearly and conspicuously makes all required disclosures.

Each of Mr. Dover's three arguments are reviewed below.[6]

### 1. Other Important Terms

Much of Plaintiff's Complaint focuses on the "Other Important Terms" box located on the bottom portion of the document.[7] The "Other Important Terms" box is a four-column table listing fifteen fees and charges.[8] Of these, Plaintiff takes particular issue with the Data Log, Expedited

---

[6] While Defendants argue that the lease complies with all of the regulatory and statutory requirements, this Court only focuses on those to which Plaintiff objects.

[7] Below the title contains a brief description: "See your lease document for additional information on early termination, maintenance responsibilities, warranties, express shipping fees, late and default charges, lockout and logfull charges, vehicle switches, repair fees, and any security interest, if applicable." Directly below this is a four-column table, with the first and third columns stating potential fees, and the second and fourth columns listing the dollar amount. The section concludes with the following: "See your Lease terms below for an explanation of the fees charged by the service center (i.e., an installation fee, removal fee, calibration fee, log full fee, and vehicle switch fee)."

[8] (1) ARS No Return Fee ($0.00); (2) No Show Fee ($50.00); (3) Lockout Fee ($80.63); (4) Exchange fee ($0.00); (5) Early Cancellation Fee ($215.00); (6) Initial Replacement Fee ($26.88); (7) Data Log Fee ($25.00); (8) Reset Calibration Fee ($43.00); (9) Expedited Shipping Fee ($19.35); (10) Late Payment Charge ($4.99, subject to any state restrictions); (11) Vehicle Switch Fee ($32.25); (12) Labor Per Hour ($53.75); (13) Device Fee ($0.00); (14) Chargeback Fee (The lessor of $30.00, or the maximum amount allowed by state law); and (15) Return Check Fee $15.00).

Shipping Fee, Late Payment Charge, and Chargeback Fee. As a legal matter, Plaintiff alleges that the Lease's inclusion of the "Other Important Terms" box violates § 1667a(4) of the CLA and §§ 1013.32(a)(2), 1013.4(d) of Reg. M.

Section 1667a(4) of the CLA requires "a clear and conspicuous" disclosure of "[t]he amount of *other charges* payable by the lessee not included in the periodic payments, including "a description of th[es]e charges." 15 U.S.C. 1667(a)(4) (emphasis added). *See also Wiskup v. Liberty Buick Co.*, 953 F.Supp. 958, 965 (N.D.Ill.1997) (explaining § 1667a(4) "[is] intended to prevent the lessor from unfairly surprising the lessee by imposing extra charges or liabilities on him").

Section 1013.4(d) of Reg. M specifies the disclosure requirements for these "other charges." 12 CFR 1013(d). "The total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments." *Id.* In other words, there must be a direct disclosure of anticipated charges that are incident to the normal operation of the lease agreement.

Plaintiff alleges that the Lease's "Other Important Terms" section falls short of the regulatory and statutory requirements by: (1) mixing potential fees with mandatory fees; (2) thereby doubling the size and substance of the model form's intended disclosures; and (3) failing to explain whether, when, and under what circumstances any of these fees and charges will be assessed. And, Mr. Dover argues, a full reading of the Lease contract provides no greater clarity on how and when the above fees would be charged.

Defendant seeks dismissal, contending that the "Other Important Terms" were sufficiently described in the Lease's terms and conditions pages—and compliant with the CLA and Reg. M. As for proof, it points to the Official Comments to § 1013.4(d), which permits a lessor to list certain

charges without running afoul of § 1013.4(d) or § 1013.3(a)(2) (the second of which is the segregated disclosure rule).

Here, the broad question is whether the "Other Important Terms" portion of the Lease disclosed in a clear and conspicuous manner the information necessary for the lessee to assess his obligations. The specific questions are: (1) are the similarities between the Lease at issue and Reg. M's model lease form sufficient to deem Defendant's Lease in compliance with Reg. M; (2) can a lessor place mandatory fees and potential fees in the same section without violating Reg. M's segregation requirement; and (3) how specific must a lease be to fulfill the "description of the charges" requirement under 15 U.S.C. § 1667a(4)?

This Court reviews each of these questions in turn below.

### a. Regulation M's Model Lease Form

Appendix A of Regulation M provides model lease forms. Use of the model forms is not required, but a lease modeled off the model forms will be deemed in compliance with the Regulation M. While lessors may make changes to the model form without losing this presumption of compliance, any changes must be presented in a manner substantially similar to the model form. 12 C.F.R. § 1013, Supp. I. To remain "substantially similar," deviations from the model form should be "minimal" and "not so extensive as to affect the substance and the clarity of the disclosures." *Id.*

Here, Plaintiff concedes that while Defendant's Lease is visually similar to the regulatory model, the Intoxalock lease errs in a critical respect—by listing out potential fees in the "Other Important Terms" box, Intoxalock's Lease doubled the size and substance of the model form's intended disclosures. Defendants reply by stating that the Lease is nearly identical to the model form, and lessors adopting the model forms are deemed to be in compliance with the regulation.

The question here is whether the Lease is substantially similar to the model form.  There are clear similarities. Each contain a segregated section titled, in bold, "Other Important Terms." Another similarity is that, right below this bolded title is non-bolded language, instructing the lessee to "See your lease."[9] But there is an important difference: Defendant's Lease includes a table listing out potential fees and charges. The model form's "Other Important Terms" section lacks a comparable table. Thus, the rub is whether the Lease's inclusion of the table in the "Other Important Terms" section is a permissible deviation from the model form such that it is still "substantially similar" to the model form.

A brief review from other courts is useful.

The District of New Jersey reviewed a lease's "Other Important Terms" section for compliance with Regulation M. *Posey v. NJR Clean Energy Ventures Corp.*, No. CV146833FLWTJB, 2015 WL 6561236, at *7 (D.N.J. Oct. 29, 2015). *Posey* found that this portion of the lease was *not* substantially similar to the model form. Even though the lease and the model form shared similar language, that lease's "Other Important Terms" section mixed unrelated terms within the same section. In other words, the *Posey* lease's "Other Important Terms" section failed to segregate related and unrelated lease terms, which indicated that the lease was not substantially similar to the model form.

Further, Plaintiff brings this Court's attention to a TILA claim reviewed by the Western District of Kentucky. *Hemauer v. ITT Fin. Servs.*, 751 F. Supp. 1241, 1243 (W.D. Ky. 1990). That

---

[9] "See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable." The Lase here also contains a substantially similarly worded non-bolded sentence that reads: "See your lease document for additional information on early termination, maintenance responsibilities, warranties, express shipping fees, late and default charges, lockout and logfull charges, vehicle switches, repair fees, and any security interest, if applicable." After the table listing potential fees and charges, the "Other Important Terms" subsection of the Lease concludes: "See your Lease terms below for an explanation of the fees charged by the service center (i.e., installation fee, removal fee, calibration fee, log full fee, and vehicle switch fee)." As an initial point, these linguistic differences are substantially similar not to run afoul of Reg. M, which allows lessors to make format or content changes as applicable.

court explored the analogous clear-and-conspicuous standard pursuant to Regulation Z. The court reasoned, in part: "Although a creditor may make the required disclosures in any manner as long as they reflect TILA's purpose, to justify a departure from TILA[,] the creditor must show that the departure enhances the clarity of the disclosure, facilitates customer comprehension or is required because of the impracticability of any other arrangement." *Id.*

Drawing from *Hemaeuer*, Mr. Dover argues that Defendant's Lease does not enhance the clarity or facilitate customer comprehension. More broadly, Plaintiff states that the segregated "Other Important Terms" lower box is *not* substantially similar to the Model Form. Defendant argues dismissal is proper, representing that nothing in the "Other Important Terms" box affects the substance or clarity of the provision.

This Court is inclined to find that the Lease's "Other Important Terms" portion is a justified departure from the model form. Unlike the lease in *Posey*, this Lease does not mix unrelated terms within the "Other Important Terms" section. Rather, each term in the "Other Important Terms" box is a *potential* charge, the charging of which would occur upon the happening of specified events. Lessors may make changes to the model form so long as it is presented in a substantially similar manner to the model form. True, the contested Lease is not identical to the model form. But, unlike in *Hemauer*, the "Other Important Terms" section does not obscure the relevant terms of the agreement. Thus, this Court finds that the Lease's "Other Important Terms" section is substantially similar to the model form, and that the changes are fairly minimal and not so extensive as to affect the substance and clarity of the disclosures.

*b. Mixing Mandatory and Potential Fees*

Second, Plaintiff alleges that the Lease's "Other Important Terms" section violates the segregated disclosure rule by mixing *potential* fees and charges with *mandatory* ones. Section

1013.3(a)(2) permits disclosures to be segregated from all other information and contain only information related directly to the required disclosures.

Plaintiff's argument suffers from a core critical defect. Nothing in the "Other Important Terms" lower box has a mandatory fee. Each of the fifteen line items are potential fees. At any rate, this Court finds that nothing in § 1667a(4) requires a separation of potential and mandatory fees. All that statutory subsection requires is a disclosure of the amount of the charges not included in the periodic payments. This defense to dismissal does not succeed either.

*c. Description of Charges*

Third, this Court also finds that the "Other Important Terms" section is sufficiently specific to fulfill the "description of the charges" requirement, pursuant to 15 U.S.C. § 1667a(4). Plaintiff argues that it is unclear whether, when, and why fees and charges would be assessed. Plaintiff states that the disclosures are confusing, and, worse still, many are sandwiched together without a proper description or itemization. Defendant merely directs Plaintiff to "[s]ee your Lease terms below for an explanation of the fees charged by the service center (i.e., installation fee, removal fee, calibration fee, log full free, and vehicle switch fee)."

Defendant retorts that § 1013.4(d) does not require a lessor to identify when the "Other Charges" will be assessed. Instead, the primary regulatory requirement is that the "Other Charges" be itemized by type and amount. What is more, the Official Comments to § 1013.4(d) evince no requirement of when the taxes and charges would be assessed. And, at any rate, Defendant emphasizes that Plaintiff was never charged these items.

This Court finds that the Lease described with sufficient clarity the "Other Important Terms" section; it does not run afoul of § 1667a(4) or § 1013.4(d) of Regulation M. Each of the fifteen charges and fees listed under the "Other Important Terms" section is listed clearly and

conspicuously and contains an adequate description of the whether and when the lessee would be assessed these charges and fees.

Below, this Court assesses each of the potential fees and charges in the "Other Important Terms" for compliance with statutory and regulatory requirements.

### i. ARS Return Fee ($0.00)

Section 4.1 of the Lease explains the process of the ARS return Fee. With each device a lessee receives, he also receives an ARS return shipping label used to return the equipment. If an ARS label is not provided, however, the lessee is responsible for paying the carrier directly for return shipping. It is apparent when the ARS no-she fee would be charged—i.e., if a label is not provided.

### ii. No Show Fee ($50.00)

Section 2 of the Lease explains with sufficient detail why and when a lessee would be charged a no-show fee—simply, if he does "not show up at the service center for the installation of the Device."

### iii. Lockout Fee ($80.63)

Section 7 of the Lease governs Lockouts, i.e., if the installed device goes into a "lockout mode." If the lessee causes the device to go into a lockout mode, a lockout fee is assessed for each occurrence. Again, the whether and when of the potential fee is explained sufficiently.

### iv. Exchange fee ($0.00)

Section 8 of the Lease discusses an exchange fee. If the device has insufficient capacity to retain necessary data between calibrations, the lessee will be charged an exchange fee to send a calibrated replacement. The Lease explains clearly that the Device will warn the user if the data log is approaching capacity. It further instructs the lessee to contact Intoxalock to arrange shipment

15

of a replacement device, at which time the user will be charged an exchange fee. The whether and when of the potential fee is explained adequately.

> *v.    Early Cancellation Fee ($215.00)*

Section 10.6 of the Lease discusses early-termination procedures. If the lessee decides voluntarily to cancel the Lease before the end of the original Lease term, he must pay an early termination fee.

> *vi.    Initial Replacement Fee ($26.88);*

Section 15.1 discusses the initial replacement fee. The lessor warrants that the Device will operate properly during the lease term. But, if it does not, the lessee must notify Intoxalock to repair or replace the Device without charge. But, if the device fails to operate after an attempt to tamper or otherwise damage the Device, then the the lessee will be charged an initial replacement fee to replace the damaged device.

> *vii.    Data Log Fee ($25.00)*

Section 4.7 discusses data log fees. It states, "For each data log request you make to [Consumer Safety Technology], we will charge a data log fee as set forth" under the Lease. While Plaintiff argues that it is unclear how the data log fee is distinct from the data processing fee, a look at § 4.2 of the Lease helps explain the difference. Section 4.2 of the lease on Data Processing Fees explains that there is a data processing fee for each device assessed to the account for the downloading and processing of the data log. In other words, a plain reading of this indicates that data is processed and categorized into the data log. Thus, if the data log is approaching capacity, then the device's display will warn the user of such. Sections 8, 13.1, and 13.4.1 touch on the "whether" and "why" the data log fee would be assessed. Section 8 informs the lessee that unusual driving patterns will make the data log fill up faster. Section 13.1 explains that there is real-time

data reporting of the Device data logs, such as GPS information, to CST's server. Section 13.4.1 says that other information "gathered and stored in the Device's data log" includes records related to test results, the location of the vehicle, and photos and videos.

*viii.*    *Reset Calibration Fee ($43.00);*

Section 3 of the Lease governs "Calibration." It explains that compliance with state law requires the calibration of the handheld part of the Device and instructs the lessee to read the user manual or go to his online account to confirm the applicable calibration requirements. As to the "whether" and "why" a reset calibration fee would be charged, the lease states that, if the lessee misses their calibration appointment, then the lessee will be charged a calibration fee.

*ix.*    *Expedited Shipping Fee ($19.35);*

Section 4.3 of the Lease offers express shipping of the Device for an additional fee, upon the lessee's request.

*x.*    *Late Payment Charge ($4.99, subject to any state restrictions);*

Section 12, titled, "Your Responsibility for the Device," explains the lessee is responsible for returning the leased Device to Intoxalock, and says, in no uncertain terms, that if the device is not returned within ten days after a replacement device is shipped, the lessee will be charged a late-payment charge.

*xi.*    *Vehicle Switch Fee ($32.25);*

Section 9, titled "Vehicle Switch," states that if the lessee needs to have the Device removed from their current vehicle and re-installed in a different vehicle, he will be assessed a vehicle switch fee.

*xii.    Labor Per Hour ($53.75);*

Section 15.1, a subsection of the part titled, "Limited Warranty, Disclaimer, and Limitation of Remedies," states that if a replacement device is needed due to the user's mishandling of the Device, then the lessee will be charged for the replacement parts needed *and* the labor costs incurred to repair the device. Page one of the Lease shows that the labor-per-hour rate is $53.75.

*xiii.    Device Fee ($0.00);*

Section 10.4 tells the lessee that a device fee will be required if the user chooses to pay using an account called the Manual Payment Account. But no device fee will be charged if the lessee uses an Automatic Pay Account. Subsection 10.5, further says that if the lessee is not required to pay a Device Fee because he opted to use the Automatic Pay Account, Intoxalock reserves the right to collect a device fee if the credit card or debit card payment is declined.

*xiv.    Chargeback Fee (The lessor of $30.00, or the maximum amount allowed by state law) and Return Check Fee ($15.00);*

Subsection 4.8, titled "Chargeback Fees/Return Check Fees," dictates that for any disputed credit-card charges, the user will be charged a so-called chargeback fee. Similarly, for any returned check, the user will be charged for each occurrence of a returned check. The Lease notes that these charges are subject to any state mandated maximum.

Thus, Defendant's inclusion of the "Other Important Terms" section directly under the segregated columns did not violate the CLA or Reg. M.

*2.    Other Charges, § 1013.4(d)*

Reg. M § 1013.4(d) requires the disclosure of "[t]he total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments." 12

CFR 1013.4(d). The Official Interpretation of 4(d) adds: "If a lessor is unsure whether a particular fee is an 'other charge,' the lessor may disclose the fee as such without violating § 1013.4(d) or the segregation rule under § 1013.3(a)(2)." *Id.*

Here, the third column on the upper portion of the Lease is titled: "Other Charges (In addition to Lease & Fee payments)." (ECF No. 1 at 9). It includes four separate fees, totaling $95.87: (1) a Data Processing Fee estimated total of $19.38; (2) Shipping and Handling Fee for $0.00; (3) an Administrative Closing Fee of $64.49; and (4) a State Fee of $12.00. The Data Processing Fee also states that the lessee will be charged "$3.00 per time" that data is processed. *Id.* Plaintiff contends that the Lease falls short of the CLA and Regulation M by failing to clearly and conspicuously disclose the "Other Charges" beyond Plaintiff's periodic, bi-weekly payments.

As a matter of law, Plaintiff asserts that these particular fees are not clearly and conspicuously disclosed for three reasons. First, there is no description accompanying these fees to explain *whether* and *when* they must be paid. (ECF No. 1 at 14, ¶ 75). Second, particularly for the Data Processing fee, Mr. Dover maintains that is not enough information for a lessee to understand why these fees are necessary or if or when the fee will be assessed. Third, the Lease only provides an estimated total of these "Other Charges," which carries the risk of an over- or under-estimation, running contrary to the CLA's purpose to provide a lessee with clarity of their potential liability.

Defendant Intoxalock seeks to have this claim dismissed because all that the CLA and Reg. M require is a disclosure of the amount and description of other such charges, which the Lease does purportedly. 15 U.S.C. § 1667a(4). Reg. M § 1013.4(d), Defendant continues, does not require identifying the date on which those Other Charges will be assessed. It requires only that

19

the Other Charges are itemized by type and amount. And the Model Form does not contain any disclosure as to timing of "the Other Charges."

Each of Plaintiff's arguments, and Defendant's bases for dismissal, are reviewed in turn below.

First, the fact that the Lease lacks a description accompanying these "Other Charges," and does not explain whether and when these fees must be paid does not violate the CLA or Reg. M. Nowhere in § 1013.4(d) is there a suggestion that a lease must disclose *when* certain fees must be paid. More important to Plaintiff's argument is the "whether"—i.e., whether the lessee will have to pay the fees. Here, the triggering event for each charge is clearly and conspicuously explained in the Lease such that a lessee is sufficiently apprised of whether (and when) he would have to pay these fees.

For example, the Data Processing Fees is unknowable at lease signing. Section 4.2 of the Lease explains: "For each Device, there will be a data processing fee assessed to your account for the downloading and processing of the data log. The estimated data processing fee over the term of this Lease is set forth on page 1 of this Lease." This statement ("there *will* be a data processing fee") clearly answers Mr. Dover's question of whether the fee will be assessed. It states in no uncertain terms that such fee will be assessed. The amount is unknown, however, since it is contingent upon the downloading and processing of the data log. The same logic applies to the Administrative Closing Fee and the State Fee.[10]

---

[10] Section 4.4 states: "This administrative closing fee *will* be assessed when your de-installation appointment is scheduled by us or when the Device is returned to us, whichever occurs first."
The State Fee is described in Section 4.6: "If we are required to do so by applicable state laws and/or regulations, we will charge and collect any mandated state fees. . . ." The Lease estimated a State Fee of $12.00, which Intoxalock charged Mr. Dover on May 1, 2020, the beginning of the Lease.

Second, Plaintiff argues that there is not enough information to understand why these Other Charges—Data Processing Fee, Administrative Closing Fee, and the State Fee –are necessary in the first place. Nothing in Reg. M requires a basis of the explanation of the charge itself. At any rate, the Lease does explain why these charges are necessary. As previously discussed, the Data Processing Fee is used to download and process data log, the Administrative Closing Fee is for the de-installation of the Device, and the State Fee is consistent with applicable state regulations.

Third, Plaintiff contends that the "Other Charges" column of the Lease is improper because it is only an estimate of the charges. But a lease is inherently a forward-looking document: it governs the future contractual behavior of two parties. An estimate is proper under the CLA and Reg. M. 15 U.S.C. § 1667a; 12 C.F.R § 1013.3(d). Most importantly, Reg. M states: "If an amount or other item needed to comply with a required disclosure is unknown or unavailable after reasonable efforts have been made to ascertain the information, the lessor may use a reasonable estimate that is based on the best information available to the lessor, is clearly identified as an estimate, and is not used to circumvent or evade any disclosures required by this part." 12 CFR 1013.3(d).

The Data Processing Fee clearly cautions the lessee that it is an "estimated total." The Administrative Closing Fee is set in stone. And the State Fee tells the lessee that it will be assessed in accordance with state regulatory requirements.

Further, assessment of these fees, Defendant explains, depends on the lessee's DUI compliance: How often Intoxalock may be required to gather data in order to report to the court failed breath tests or tampering with the device is outside of Intoxalock's control. And the actual charges were consistent with the estimate: Between May 1 and August 10, 2020, Plaintiff was invoiced $9.69 for Data Processing Fees, one-half of the disclosed estimate of $19.38.

21

3.  *"Total of Payments," 12 C.F.R. pt. 1013.4(e)*

Section 1013.4(e) of Regulation M requires the disclosure of the "Total of Payments." 12 CFR 1013.3(e). Regulation M explains that the "Total of Payments" is the sum of the following charges: (1) the amount due at lease signing (less any refundable amounts); (2) the total amount of periodic payments (less any portion of the periodic payment paid at lease signing); and (3) other charges. *Id.*

In this case, the Lease's fourth column is titled "Total of Payments." It contains a parenthetical stating: "The amount you will have paid by the end of the Lease, including sales tax and state mandated fees, if applicable," with the calculated total of $840.27. The $840.27 figure consists of the following three charges: (1) Amount Due at Lease Signing ($80.62); (2) Lease & Fee Payments; and (3) Other Charges ($95.87).

The Lease & Fee Payments, in turn, is broken down into two figures: (1) the monthly Lease payment of $45.68; and (2) the monthly device protection fee of $5.38. The first payment of each was due at signing, followed by thirteen payments. In other words, the total Lease payment is $639.52 (13 *times* 45.68) and the total monthly device protection fee is $75.32 (13 *times* $75.32)

Mr. Dover states that the Total of Payments' sum of $840.27 is inconsistent with the following calculation: Amount Due at Lease Signing ($80.62) + *Thirteen* Lease Payments ($639.52) + *Thirteen* Device Protection Fees ($75.32) + Other Charges ($95.87) = $891.33.

Of course, Mr. Dover is correct that the above calculation comes to $891.33, though this is a miscalculation of the Lease. But Mr. Dover forgets to take into account the fact that the first Lease payment and the first Device Protection fee were paid at signing. Thus, the correct calculation for the Total of Payments sum is: Amount Due at Lease Signing, including First Lease

Payment and First Device Protection Fee ($80.62) + *Remaining* Lease Payments ($593.84) + *Remaining* Device Protection Fees ($69.94) + Other Charges ($95.87) = $840.27.

And Regulation M provides explicitly for this method of calculation: the Total of Payments sum is "less any portion of the periodic payment paid at lease signing." 12 CFR 1013.4. Defendant is entitled to dismissal for this reason as well.

## V. CONCLUSION

For the reasons set forth above, this Court hereby **GRANTS** Defendant's Motion to Dismiss. (ECF No. 9). This case is hereby DISMISSED in its entirety.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 17, 2021**